UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MOHAMMAD A. AZAD,
                     Plaintiff,

      -v-

LOUIS A. MOLINA, *et al.*,
                     Defendants.

24-CV-1623 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

      Plaintiff Mohammad A. Azad, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 challenging his termination from the New York City Department of Correction ("DOC") following a leave of absence from his job as a correction officer. Azad names as defendants the City of New York ("the City") and several of its employees ("City Employee Defendants"); the law firm Joey Jackson Law, PLLC, and its lawyers Joey Jackson and Peter Troxler ("Jackson Defendants"); and the union Correction Officers' Benevolent Association, Inc., and its president Benny Boscio ("Union Defendants"). Azad alleges that, by firing him with insufficient process, Defendants violated the Sixth and Fourteenth Amendments to the United States Constitution, as well as a number of state and local laws.

      Before the Court are three motions to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed respectively by the City and the City Employee Defendants, the Jackson Defendants, and the Union Defendants. For the reasons that follow, those motions are granted, and this case is dismissed.

I.    **Background**

    A.    **Factual Background**

Unless otherwise noted, the facts are drawn from Azad's Amended Complaint (ECF No.

1

44 ("AC")) and memorandum in opposition to the motions to dismiss (ECF No. 76 ("Opp.")) and are presumed true for the purpose of resolving these motions.[1]  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015).

On August 27, 2009, Mohammad Azad was appointed as a correction officer for the DOC.  (AC ¶ 22.)  At some point during his employment, representatives from the union Correction Officers' Benevolent Association, Inc. ("COBA") approached Azad, "introduced themselves," and "gave [Azad] a form to complete and sign which would allow COBA to deduct union dues from [Azad's] pay check."  (*Id.* ¶¶ 25-26.)  COBA representatives also made a "presentation" during which, Azad alleges, they told him "that correction officers enjoyed unlimited sick leave as a part of their contract benefits."  (*Id.* ¶ 27.)

On April 4, 2021, Azad was involved in an altercation between two inmates.  (*Id.* ¶¶ 63-64.)  In order to protect "an inmate who was about to be assaulted," Azad stepped in between the two individuals, just as another inmate "was charging at" the first, and Azad then restrained the aggressor until back-up support arrived.  (*Id.* ¶¶ 64-65.)  Because of this incident, Azad "required surgery" and "was kept from work by his Treating Physician."  (*Id.* ¶¶ 66-67.)  Azad does not allege that he ever returned to work after his treatment.[2]

On November 4, 2022, official charges were filed against Azad for "a pattern of excessive absence," including "reporting sick on approximately one-hundred and eight (108)

---

[1] "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."  *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).  Because Azad is proceeding *pro se*, the Court will consider facts raised in his opposition to the motions to dismiss.

[2] Azad does not state the last day that he was on duty at the DOC.  However, the disciplinary charges against Azad state that the period in which he accrued an excessive number of absences without adequate medical documentation began on December 23, 2021.  (AC at 63.)

days," and "fail[ing] to provide adequate medical documentation" for this period of absence. (*Id.* at 63.) However, Azad was still paid throughout the duration of this leave, even as disciplinary charges were filed against him—totaling nearly two years of paid leave. (*See id.* at 200.)

On May 2, 2023, City Employee Defendant Joycelyn McGeachy-Kuls, an administrative law judge ("ALJ") for the City's Office of Administrative Trials and Hearings ("OATH"), held a pre-trial conference in Azad's disciplinary case. (*See id.* ¶¶ 88-89.) During this hearing, McGeachy-Kuls "asked [Azad] questions relating to his ability to return to full duty and if he had a date certain that he would return to duty by." (*Id.* ¶ 89.) Defendant Peter Troxler, a COBA-appointed attorney, represented Azad in this pre-trial conference, and Azad alleges that Troxler did not object to the legitimacy of the conference, or the processes being observed, during the approximately fifteen-minute hearing. (*See id.* ¶¶ 90-94, 97-106.)

On July 31, 2023, McGeachy-Kuls conducted a virtual Section 75 hearing to adjudicate Azad's disciplinary charges. (*Id.* ¶ 112.) Azad did not attend the hearing, but instead appointed Wayne Tatum, a private consultant for DOC employees facing disciplinary actions, to represent him. (*See id.* at 41-42, 145-46.) Tatum explained that Azad was "out sick" and "incapacitated," though Tatum refused to provide any further insight into Azad's condition. (*Id.* at 147-48, 150.) Azad, through Tatum, did not present any witnesses during the OATH proceeding (*id.* at 144), but instead challenged the qualification of ALJ McGeachy-Kuls and the legitimacy of the hearing (*id.* at 149, 151-52).

Azad was terminated on October 24, 2023, when Defendant and DOC Commissioner Louis Molina signed a final determination finding Azad "guilty" of accruing excessive absences and using excessive sick leave. (*See id.* at 222-23.)

B.   **Procedural History**

Azad commenced this action on March 1, 2024. (ECF No. 1.) After Defendants moved to dismiss Azad's original complaint, the Court granted Azad's uncontested motion to amend his complaint (ECF No. 43), and he proceeded to file an amended complaint on October 29, 2024 (AC).[3] The City and City Employee Defendants moved to dismiss Azad's amended complaint on December 3, 2024. (ECF No. 51 ("City Mtn.").) The Jackson Defendants filed a letter on December 6, 2024 (ECF No. 54), stating that they would rely on their initial motion to dismiss (ECF No. 15) and the memorandum in support of that motion (ECF No. 17 ("Jackson Mem.")). The Union Defendants moved to dismiss the amended complaint on February 13, 2025 (ECF No. 64), and also filed a memorandum in support of their motion (ECF No. 65 ("Union Mem.")).

After these motions were submitted, Azad moved twice to amend his complaint a second time (ECF Nos. 69, 73), but the Court denied his motions (ECF Nos. 71, 75). Azad then opposed the three motions to dismiss. (Opp.) On May 22, 2025, the Union Defendants replied in further

---

[3] Azad's amended complaint is 232 pages, and includes a Declaration of Wayne Tatum, a former "correction officer" for the DOC and a current private consultant for City employees facing discipline. (*See* AC at 41-42.) The City Defendants and the Union Defendants urge the Court to disregard Tatum's Declaration because it is not integral to the amended complaint and is "writing created for the purposes of litigation that post-dates Plaintiff's termination." (*See* ECF No. 51 at 14-15; ECF No. 65 at 9.) The Court agrees. Tatum's twenty-one page Declaration is full of conclusory statements, questionable explanations of local law, and rehashing of the OATH hearing and Tatum's challenges to the procedures therein. Because this third-party Declaration "was created long after the events giving rise to this litigation and is thus not the type of 'written instrument' falling within the purview of Rule 10(c)," it may not be properly incorporated into the amended complaint by reference. *See Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 223-24 (S.D.N.Y. 2018); *see also Palin v. New York Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) (holding that material created "after litigation has already begun is not the type of material that ordinarily has the potential" to be considered "integral" because there is no way a plaintiff could have "relied heavily" on that material in drafting the complaint (cleaned up)).

support of their motion (ECF No. 78), and the City and City Employee Defendants filed a letter explaining they would rely on their original moving papers (ECF No. 79).

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Such a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, the Court must accept as true all factual allegations in the amended complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Azad is litigating his case *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). Because of this, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). However, all of this being true, "a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## III. Discussion

Azad brings his claims pursuant to 42 U.S.C. § 1983 and asserts violations of the Due Process Clause of the Fourteenth Amendment, New York Civil Service Law Section 75 ("Section 75"), as well as several sections of the New York City Charter, the City's Public

Officers Law, and mayoral executive orders.[4] (AC ¶ 6.) Azad also brings a related *Monell* claim against the City. (*Id.*)

### A.  Fourteenth Amendment Due Process

"A public employee has a property interest in continued employment" protected by the Fourteenth Amendment's Due Process Clause which guarantees certain procedural safeguards. *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). "In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived her of a protected property or liberty interest." *Luck v. Mazzone*, 52 F.3d 475, 477 (2d Cir. 1995) (per curiam) (brackets and quotation marks omitted). Because the Court agrees with Defendants that Azad received adequate process both before and after his termination, Azad fails to state a Fourteenth Amendment claim.[5]

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on

---

[4] Azad also asserts violations of the Sixth Amendment, 42 U.S.C. § 1985, and 42 U.S.C. § 1986. (AC ¶ 6.) The protections of the Sixth Amendment do not apply to a civil plaintiff, so that claim is dismissed. *Turner v. Rogers*, 564 U.S. 431, 441 (2011) ("[T]he Sixth Amendment does not govern civil cases.").

The factual allegations in Azad's complaint also fail to state a conspiracy claim pursuant to 42 U.S.C. § 1985(3), the only sub-section of § 1985 that could plausibly apply here, because such a claim must allege that the conspiracy to deprive a plaintiff of his civil rights was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quotation marks omitted). Azad has alleged no such motivation here. And because Azad has not adequately alleged a conspiracy pursuant to § 1985, he cannot succeed on his § 1986 claim, which "must be predicated on a valid § 1985 claim." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000) (quotation marks omitted).

[5] Because Azad was provided adequate process to satisfy Fourteenth Amendment requirements, the Court does not reach the question of whether the Jackson Defendants and the Union Defendants were state actors, engaged in joint activity with state actors, or were acting in a Section 1983 conspiracy with state actors in terminating Azad.

random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). Azad's claim fails regardless of whether the DOC's process was based on established procedures or whether several individual Defendants committed "random, unauthorized acts" by allegedly failing to abide by Section 75 during Azad's pre-termination hearing.

First, if the DOC's termination process was based on established City procedures, Azad must have been offered "a pretermination hearing that satisfied the 'essential requirements of due process.'" *Flynn v. Bloomingdale*, No. 22-1431, 2023 WL 4832223, at *3 (2d Cir. July 28, 2023) (summary order) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). The requirements for this pre-termination hearing "need not be elaborate." *See Loudermill*, 470 U.S. at 545; *Gilbert v. Homar*, 520 U.S. 924, 929 (1997) ("[A] public employee dismissable only for cause [is] entitled to a very limited hearing prior to his termination."). As the Second Circuit has described it:

> [A] pre-termination hearing does not purport to resolve the propriety of the discharge, but serves mainly as a check against a mistake being made by ensuring there are reasonable grounds to find the charges against an employee are true and would support his termination. Requiring more than notice of the charges, an explanation of the nature of the employer's evidence, and an opportunity for the employee to respond would impede the government's interest in quickly removing from service an unsatisfactory employee.

*Locurto v. Safir*, 264 F.3d 154, 173-74 (2d Cir. 2001).

The allegations make clear that these minimum requirements were met preceding Azad's termination from the DOC. Months before Azad was terminated, he participated in a pre-trial hearing on May 2, 2023, during which ALJ "McGeachy-Kuls asked [Azad] questions relating to his ability to return to full duty and if he had a date certain that he would return to duty by." (*See* AC ¶¶ 88-89.) And on July 31, 2023, McGeachy-Kuls conducted a virtual OATH hearing, pursuant to Section 75, to address the disciplinary charges filed against Azad for excessive use of

sick leave. (*See id.* at 145.) Though Azad chose not to personally appear at the hearing, and instead had his "representative" Wayne Tatum appear in his place,[6] the hearing was still adequate to satisfy the minimum requirements of the Due Process Clause. Azad was notified of the charges against him on March 10, 2023, when he signed an attestation form acknowledging receipt of the "charges and specifications" filed against him by the Deputy Commissioner of Correction. (AC at 63-64 (capitalization altered).) Second, according to the select pages of the Section 75 hearing transcript that Azad attached to his amended complaint, ALJ McGeachy-Kuls admitted into evidence a record of Azad's timesheet, showing his absences over time (*id.* at 176-77, 180) and heard testimony from three witnesses called by the DOC (*see id.* at 144). Finally, Azad was given the opportunity to appear at the hearing and to call his own witnesses—both of which he declined to do. (*Id.* at 145-51, 155.)

Azad now claims that this Section 75 hearing itself was deficient because it did not follow the commands of certain local laws. For example, Azad claims that he was not properly served with a "petition" from OATH before the hearing (*id.* ¶¶ 149-52), that the OATH docketing process was legally insufficient and contained exaggerated claims about his sick leave (*see id.* ¶¶ 118, 153-56), and that the ALJ lacked "lawful authority" to conduct the hearing (*id.* ¶ 165). But Azad mistakes the guarantees of procedural due process pursuant to the Fourteenth Amendment and the additional protections that state and local law may afford him. *See McDarby v. Dinkins*, 907 F.2d 1334, 1337-38 (2d Cir. 1990) ("When the minimal due process

---

[6] Though Azad challenges the notice he was given via a "petition" from OATH, he does not allege that he was unaware of the Section 75 hearing. Additionally, Tatum assured the ALJ during the hearing that he had "[a]bsolutely, 100 percent[,] [f]or the record, 100 percent" discussed the hearing with Azad ahead of time, and that Azad was aware of the proceeding. (AC at 150-51.) And, according to the DOC's attorney at the hearing, Azad had "on at least two occasions acknowledged that he had trial dates." (*Id.* at 154.)

requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations." (quotation marks omitted)).

Further, even if the Section 75 hearing was so flawed that it did not satisfy federal due process, or the actions of certain Defendants were "random, unauthorized acts" rather than standard City policy, due process was satisfied when Azad was offered a post-termination hearing pursuant to Article 78 of the New York City Civil Practice Law and Rules ("Article 78"). *See Locurto*, 264 F.3d at 173, 175. On November 1, 2023, Azad signed and dated a document confirming his receipt of a letter from DOC Commissioner Louis Molina stating that Azad was officially terminated and that:

> Under the provision of Section 76 of the Civil Service Law, you are entitled to appeal from this determination by application either to the Civil Service Commission or to a court in accordance with the provisions of Article 78 of the Civil Practice Law and Rules. If you elect to appeal to the Commission such appeal must be filed in writing within twenty (20) days of receipt of this determination.

(AC at 222.) "Courts in this circuit as well as the Second Circuit Court of Appeals have held, clearly and repeatedly, that the combination of Section 75 and [Article] 78 provide a terminated public employee with remedies that are consistent with the requirements of the due process clause of the Constitution." *Longo v. Suffolk Cnty. Police Dep't Cnty. of Suffolk*, 429 F. Supp. 2d 553, 559 (E.D.N.Y. 2006) (collecting cases). And even though Azad does not allege that he pursued an Article 78 proceeding, "[t]he fact that Plaintiff chose . . . [not to] take advantage of these procedures does not mean [he] was deprived of process." *Flynn*, 2023 WL 4832223, at *4.

Because Azad received a Section 75 pre-termination hearing and was offered the opportunity to pursue an Article 78 post-termination hearing, his federal due process rights were satisfied, and Defendants' motions to dismiss this claim are thus granted.

9

### B.     *Monell* Claim

Azad also brings a *Monell* claim against the City, which subjects municipalities to Section 1983 liability under certain circumstances. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). An individual may recover damages against a municipality when municipal officials violate his constitutional rights, so long as the unconstitutional actions were caused by an official policy or custom. *Id.* at 690-91. However, when "no constitutional injury" has occurred, a *Monell* claim necessarily fails. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Because the Court dismisses Azad's Fourteenth Amendment due process claim, his *Monell* claim has no underlying constitutional injury. The Court therefore dismisses his claim for municipal liability as well.

### C.     **State and City Law Claims**

Without the due process and *Monell* claims, no federal claims remain in this action. A federal district court may decline to exercise supplemental jurisdiction over non-federal claims once it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In making this determination, courts consider the "familiar factors of judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Where, as here, "all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7; *see also Karmel v. Liz Claiborne, Inc.*, No. 99-CV-3608, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2022) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), . . . it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

The Court thus declines to exercise supplemental jurisdiction and dismisses Azad's state and local law claims without prejudice to refiling in state court. *See Cohill*, 484 U.S. at 350.

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.

The Clerk of Court is directed to terminate the motions at Docket Numbers 39, 51, 54, and 64, to enter judgment of dismissal, and to close this case.

SO ORDERED.

Dated: June 25, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge